Dr. Henry P. Williams, Superintendent Little Rock School District 810 West Markham Little Rock, Arkansas 72201
Dear Dr. Williams:
This is in response to your request for an opinion, pursuant to A.C.A. § 25-29-105(c)(3)(B), on whether the Little Rock School District's decision not to release three letters requested by an Arkansas Democrat Gazette reporter is consistent with the Arkansas Freedom of Information Act ("FOIA"), A.C.A. § 25-19-101
to -107. The reporter who requested the information, Mr. Danny Shameer, originally asked for an opinion on the same question. Opinion No. 93-310 was issued in response to his request, and it was stated therein that no conclusive determinations could be made with respect to the District's decision, as this office had not been provided with the records in question. The general tests to apply in making such determination were, however, set out therein.
You have now provided the actual records in question (three letters from former superintendent Mac Bernd to former principal John Hickman), and ask this office to determine whether the District's decision not to release these records to the reporter is consistent with the FOIA. You note that the District has determined that the release of these "personnel records" would constitute a "clearly unwarranted invasion of personal privacy" and that there is not a "compelling public interest" in their disclosure.
It is my opinion that the District's decision, at least in part, is contrary to the FOIA.[1]
The records in question consist of: 1) a letter dated 4/9/93 from Mr. Bernd to Mr. Hickman informing him that Mr. Bernd was recommending termination of Mr. Hickman's contract, detailing the reasons therefor, and informing him of the right to a hearing; 2) a letter dated 4/15/93 from Mr. Bernd to Mr. Hickman suspending Mr. Hickman, detailing the reasons therefor, and informing him of the right to a hearing; and 3) a letter dated 4/23/93 from Mr. Bernd to Mr. Hickman informing him that Mr. Bernd was recommending nonrenewal of Mr. Hickman's contract, detailing the reasons therefor, and informing him of the right to a hearing.
The records in question are, in my opinion, "job performance" records. It was stated in Op. Att'y Gen. 93-055 that "a letter of recommendation of termination, letters of reprimand and other disciplinary records are "job performance records." See also
Op. Att'y Gen. Nos. 88-097, 91-303, and 91-324. See also
Watkins, The Arkansas Freedom of Information Act (mm Press 1988) at 92. The reasons given for the suspension and recommendations of termination and nonrenewal include allegations of the mishandling of school funds and sexual harassment. This office has previously opined that records detailing such allegations can be "job performance records." See Op. Att'y Gen. 93-055 (misappropriation of public funds); Opinion 92-310
(allegations of sexual harassment); and Opinion 88-162
(allegations of sexual harassment.)
It was stated in Opinion No. 93-310, issued to Democrat Gazette reporter Danny Shameer, that "[i]f the records in question are `employee evaluation or job performance records,' and formed the basis for the decision to suspend, and there is a compelling public interest in their disclosure, the records would be subject to inspection and copying under the FOIA." This conclusion was based upon the assumption, from the custodian's response to the FOIA request, that there had been a "final administrative resolution" of the suspension proceeding. Having determined that the records are indeed "job performance records," it is necessary to decide only whether the records "formed a basis for the decision to suspend" and whether there is a "compelling public interest" in their disclosure.
Although the question of whether particular records "formed a basis" for suspension has not been fleshed out by any interpretive case law, and is to some degree a factual one, in my opinion the April 15, 1993, letter suspending Mr. Hickman and detailing the grounds therefor is a document which "formed a basis" for the suspension. The two remaining letters detail identical information but do so to support recommendations of termination and nonrenewal. It is unclear whether these letters "formed a basis" for the suspension. This is a decision to be made by the District in light of all the facts weighing in the decision to suspend.
Additionally, in my opinion there is a compelling public interest in the release of the documents in question. See Op. Att'y Gen. No. 93-055 (misappropriation of public funds gives rise to a compelling public interest); Op. Att'y Gen. 89-073 (allegations of sexual misconduct give rise to compelling public interest);[2] and Op. Att'y Gen. No. 88-078 (compelling public interest found in school superintendent's release from contract provisions).
In my opinion therefore, at least the April 15, 1993, letter suspending Mr. Hickman is subject to inspection and copying under the FOIA. An important limitation, however, attends this conclusion. Part 2(a) and (b) of this letter detail allegations of sexual harassment. Some of the allegations contained in these paragraphs could give rise to a Fourteenth Amendment "right to privacy" claim of Mr. Hickman and the other individuals involved.Whalen v. Roe, 429 U.S. 589 (1977). In evaluating this potential claim, it must first be determined whether the information involves "personal matters." McCambridge v. City ofLittle Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The court inMcCambridge adopted a three part test to determine what constitutes a "personal matter." This phrase includes information 1) that the individual wants to and has kept private or confidential, 2) that, except for the challenged government action, can be kept private or confidential, and 3) that to a reasonable person would be harmful or embarrassing if disclosed. The court has stated with respect to this test that:
 The first part of the test encompasses information the individual wants to keep and has kept private. One should not expect to keep private information he has indiscriminately exposed in public. . . . The second part of the test excludes matter which is already on the public record. . . . The third part involves an objective test.
298 Ark. at 230.
The District must first determine whether the information contained in Part 2 of the letter constitutes a "personal matter." It is my understanding that the information contained in Part 2(a), including the identity of the individual referred to in Part 2(a) has not been kept private and in fact is a part of the public record in the suspension proceedings. If this is true, the information is not a "personal matter" for Fourteenth Amendment purposes, and the information can be released. It is also my understanding, however, that the information contained in Part 2(b) of the letter has been kept private and has not been made a part of any public record. It is my opinion that this information would constitute a "personal matter" under the three part test set out in McCambridge. The final question under theMcCambridge analysis, therefore, is whether the governmental interest in disclosure under the FOIA outweighs the privacy interest in nondisclosure of the personal matters. In my opinion, this is a close question. Although this office has previously found a "compelling" public interest in allegations of sexual harassment by public employees, the information contained in Part 2(b) may or may not constitute an allegation of "sexual harassment" as that concept is legally defined. The language used in Part 2(b) is simply not definite enough to make a determination in this regard. The government's interest in disclosure of this information may therefore be lessened with respect to this portion of Part 2. It is my opinion, also, that both Mr. Hickman and the individual named in this section have a privacy interest in the substance of this information. In my opinion, however, Mr. Hickman's privacy interest is lessened in light of the fact that he held a position of high authority in the LRSD, he requested a public hearing on the allegations at issue, and he continues to hold a position of public trust in the public schools. The individual mentioned in this section, however, has not, according to my understanding, made any public allegations, and this person's identity has not been publicly disclosed. In my opinion, although there is a legitimate public interest in disclosure of the information contained in Part 2(b), there is an insignificant public interest in knowing the actual identity of the individual mentioned in Part 2(b).
Although it is a close question, in light of the privacy rights of both Mr. Hickman and the individual mentioned in Part 2(b), it is my opinion that the name of the individual mentioned in Part 2(b) should be excised from the April 15, 1993 letter prior to its release (and from the other letters if the district determines that they "formed a basis" for the suspension and releases them). Although Mr. Hickman does have a privacy interest in the content of this information, in my opinion this interest is outweighed in light of the factors set out above. The individual mentioned in this section also has a privacy interest in the release of this information. This interest is not outweighed by any governmental interest. If the name of this individual is deleted, however, no privacy interests of this individual are implicated by release of the substance of the paragraph.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] It should be noted that according to the Pulaski County Office of the Prosecuting Attorney, there is an ongoing investigation of this matter. It is my understanding, however, that the records about which you inquire are not a part of the investigation.
[2] Although it does not appear in the text of Op. 89-073, the misconduct which led to the suspension of the police officers in question was sexual in nature.